**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Douglas A. Ducey,<br><br>          Plaintiff,<br>vs.<br><br>Janet Yellen, et al.,<br><br>          Defendants. | No. CV-22-00112-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendants' Motion to Dismiss (Doc. 19). For the reasons that follow, the Motion will be granted.[1]

**I.  BACKGROUND**

On January 21, 2022, Plaintiff Douglas A. Ducey, Governor of the State of Arizona, filed a Complaint against Defendants Janet Yellen, Secretary of the Treasury (the "Secretary"); Richard K. Delmar, Acting Inspector General of the Department of Treasury; and the United States Department of the Treasury ("Treasury"). (Doc. 1). The Complaint arises out of the American Rescue Plan Act of 2021 ("ARPA"), specifically 42 U.S.C. § 802, which was signed into law on March 11, 2021. (Doc. 1 ¶¶ 6, 17). Section 802 of the ARPA created the Coronavirus State and Local Fiscal Recovery Fund ("SLFRF") by appropriating more than $219 billion to be distributed to states to mitigate

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. See LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

the fiscal effects of the COVID-19 pandemic. (Doc. 1 ¶¶ 6, 19). Section 802(c)(1) provides an exclusive list of four permissible uses for SLFRF funds, the first of which is as follows:

> to respond to the public health emergency with respect to the Coronavirus Disease 2019 (COVID-19) or its negative economic impacts, including assistance to households, small businesses, and nonprofits, or aid to impacted industries such as tourism, travel, and hospitality . . . .

42 U.S.C. § 802(c)(1)(A); (Doc. 1 ¶ 20). The ARPA also includes a recoupment remedy that requires a state that fails to comply with § 802(c) to repay any misused funds to Treasury. 42 U.S.C. § 802(e); (Doc. 1 ¶ 24). The Secretary may also reduce amounts payable to the state by the amount to be recouped. 42 U.S.C. § 802(b)(6)(ii)(III); (Doc. 1 ¶ 25). Finally, the statute gives the Secretary "authority to issue such regulations as may be necessary or appropriate to carry out this section." 42 U.S.C. § 802(f); (Doc. 1 ¶ 26).

On May 17, 2021, Treasury published an Interim Final Rule implementing the SLFRF. 86 Fed. Reg. 26786; (Doc. 1 ¶ 7). The Interim Final Rule detailed permissible uses for SLFRF funds, which included addressing the educational impacts of the COVID-19 pandemic as a response to the pandemic's negative economic effects. (Doc. 1 ¶¶ 31–32).

On May 21, 2021, the Governor's Office of Strategic Planning and Budgeting signed Treasury's certification form, authorizing Treasury to make SLFRF payments to the State of Arizona (the "State"). (Doc. 1 ¶ 36). The State then received its first SLFRF payment. (Doc. 1 ¶ 37). On August 17, 2021, Plaintiff announced the establishment of two education programs funded by SLFRF dollars: the Education Plus-Up Grant Program ("Plus-Up") and the COVID-19 Educational Recovery Benefit Program ("ERB"), collectively, the "Programs." (Doc. 1 ¶¶ 38, 42). Plus-Up "made $163 million in ARPA funds available to Arizona school districts and charter schools" that met certain financial parameters, did not require the use of face coverings, and remained open for in-person instruction during the 2021–2022 school year. (Doc. 1 ¶¶ 38–41). The ERB program

"supplied $10 million in ARPA monies for K-12 students and families facing financial and educational barriers due to school closures and mandates." (Doc. 1 ¶ 42). The ERB program provided up to $7,000 per student for school tuition, tutoring, and childcare fees for students whose household income fell below a certain threshold and whose "current school is requiring the use of face coverings." (Doc. 1 ¶ 43).

On October 5, 2021, Treasury wrote a letter to Plaintiff's office asserting that the Programs "undermine evidence-based efforts to stop the spread of COVID-19" and that programs undermining such efforts or discouraging compliance with evidence-based solutions for stopping the spread of COVID-19 are not permissible uses of SLFRF funds. (Doc. 1 ¶¶ 46–48). Treasury required Plaintiff to respond to the letter with a remediation plan and warned that "failure to respond or remediate may result in administrative or other action." (Doc. 1 ¶ 51). On November 4, 2021, Plaintiff responded to Treasury by detailing how the Programs aimed to address the negative economic impacts of the pandemic, as permitted by the ARPA, by addressing educational disparities. (Doc. 1 ¶¶ 52–56).

On January 6, 2022, Treasury issued a Final Rule, effective April 1, 2022, adopting the Interim Final Rule with amendments. (Doc. 1 ¶¶ 57, 63). One of those amendments was the addition of the following language:

> A program or service that imposes conditions on participation in or acceptance of the service that would undermine efforts to stop the spread of COVID-19 or discourage compliance with recommendations and guidelines in [Center for Disease Control and Prevention ("CDC")] guidance for stopping the spread of COVID-19 is not a permissible use of funds. In other words, recipients may not use funds for a program that undermines practices included in the CDC's guidelines and recommendations for stopping the spread of COVID-19.

87 Fed. Reg. 4338, 4353; (Doc. 1 ¶ 58). The Court will refer to this provision as the "Restriction." The Final Rule provided as examples of impermissible uses "programs that impose a condition to discourage compliance with practices in line with CDC guidance" and "programs that require . . . entities not to use practices in line with CDC guidance as

a condition of receiving funds." 87 Fed. Reg. 4338, 4353; (Doc. 1 ¶ 59).

On January 14, 2022, Treasury wrote another letter to Plaintiff stating that the Programs "as currently structured are ineligible uses of SLFRF funds." (Doc. 1 ¶ 64). The letter stated that Plaintiff must either redirect SLFRF funds to eligible uses or remediate the Programs to comply with the Restriction. (Doc. 1 ¶ 69). It further stated that Treasury "would welcome the opportunity to discuss" its concerns with Plaintiff and that it "is committed to working with recipients to take advantage of the many eligible uses and great flexibility available under the SLFRF program." (Doc. 1-7 at 3). Treasury stated that "failure to take either step within sixty (60) calendar days may result in Treasury initiating an action to recoup SLFRF funds used in violation of the eligible uses" and that it "may also withhold funds from the State of Arizona's second tranche installment of SLFRF funds until Treasury receives information that confirms" that Plaintiff had redirected the funds or remediated the Programs. (Doc. 1 ¶ 70). The Final Rule provides for specific administrative processes prior to recoupment, including an initial notice and an opportunity for reconsideration. 31 C.F.R. § 35.10.

On January 21, 2022, Plaintiff filed his Complaint, alleging four counts: (1) violation of the Administrative Procedure Act ("APA") based on the Final Rule; (2) violation of the APA based on the January 14 letter; (3) violation of the Spending Clause, Article I, § 8, cl. 1 of the Constitution; and (4) violation of the nondelegation doctrine. (Doc. 1). Plaintiff seeks declaratory and injunctive relief. (Doc. 1). On March 22, 2022, Defendants filed the instant Motion to Dismiss, which has been fully briefed. (Docs. 19, 20, 22, 23).

**II.   DISCUSSION**

Defendants move to dismiss the Complaint for lack of jurisdiction based on justiciability issues and for failure to state a claim. The Court will first address the justiciability issues and will then move to the merits.

///

///

### a. Justiciability

Defendants' Motion raises four justiciability issues, which will be addressed in sequence: (1) standing, (2) ripeness, (3) administrative exhaustion, and (4) reviewability under the APA.

### i. Standing

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, the plaintiff must establish "(1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) causation; and (3) a likelihood that a favorable decision will redress the injury." *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010). Only the first element is at issue in this case. To establish injury when bringing a pre-enforcement challenge to a law, "[t]he plaintiff must allege (1) an 'intention to engage in a course of conduct arguably affected with a constitutional interest,' (2) 'but proscribed by a statute,' and (3) there must be 'a credible threat of prosecution' under the statute." *Arizona v. Yellen*, 34 F.4th 841, 849 (9th Cir. 2022) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)).

*Arizona v. Yellen* applies squarely here. In that case, the State of Arizona challenged a restriction of the ARPA's SLFRF provision that prohibits states from using funds to subsidize a tax cut or otherwise offset state tax revenue reductions. *Id.* at 845–46. After the law was enacted and without any specific threat of enforcement of the provision having been made against Arizona, the State challenged it as a violation of the Spending Clause and the Tenth Amendment. *Id.* at 845, 847. The district court held that Arizona did not have standing because it lacked a cognizable injury, but the Ninth Circuit reversed. *Id.* at 845, 847–48.

As to the first *Driehaus* factor, in *Arizona*, the Ninth Circuit held that it "must accept—for standing purposes—[Arizona's] allegations that the condition is unconstitutionally ambiguous and coercive," because "standing in no way depends on the merits." *Id.* at 849 (internal quotation marks omitted). Likewise, here, the Court must

accept Plaintiff's allegations that the ARPA and the Final Rule violate the Constitution and the APA, respectively.[2] Thus, Plaintiff has satisfied the first factor.

With respect to the second *Driehaus* factor, the Court must determine what conduct is proscribed by the ARPA and the Final Rule and evaluate whether Plaintiff's desired course of conduct falls under their sweep. *See id.* Here, it is Defendants' own position, according to the January 14 letter, that the Programs "as currently structured are ineligible uses of SLFRF funds" pursuant to the ARPA and the Final Rule. (Doc. 1-7 at 3). The second factor is therefore satisfied.

The third *Driehaus* factor—whether there is a credible threat of prosecution—is where the primary dispute lies in this case. When considering whether a threat of enforcement is sufficiently genuine to confer standing, courts in the Ninth Circuit consider "(1) whether the plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute." *Arizona*, 34 F.4th at 850 (internal quotation marks omitted). The third prong "carries little, if any weight" where a challenged statute is new, as the ARPA is. *Id.*

Defendants argue that there is no credible threat of prosecution "because Treasury has not initiated recoupment proceedings or even stated unequivocally that it would do so." (Doc. 19 at 14). But in *Arizona*, the Court held that, even though no threat of enforcement had been made against Arizona specifically, the following was sufficient evidence to show an intent to enforce the provision at issue: (1) that the federal government had not disavowed enforcement of it; (2) a letter from the Secretary confirming that the provision would be enforced "in a cooperative fashion inviting

---

[2] To be sure, the first *Driehaus* factor refers specifically to a plaintiff's *constitutional* interest. *Driehaus*, 573 U.S. at 159. But the Court sees no reason why the same analysis should not apply to an alleged violation of the APA, and there is Ninth Circuit case law that supports such an application. *See United States v. Szabo*, 760 F.3d 997, 1006–07 (9th Cir. 2014) (citing *Driehaus* to suggest that a pre-enforcement challenge of a regulation under the APA would have been available).

'ongoing dialogue' between the Treasury and the States"; and (3) the detailed and specific recoupment process outlined in Treasury's regulation. *Arizona*, 34 F.4th at 850. Those same pieces of evidence are present here: Defendants have not disavowed that the Restriction will be enforced; the January 14 letter confirms that the Restriction will be enforced, even if it suggests a cooperative approach; and the same detailed recoupment regulation applies. Following the Ninth Circuit's holding in *Arizona*, where the third *Driehaus* factor carried "dispositive weight," Plaintiff has alleged a credible threat of prosecution sufficient to confer standing. *Id.*

There is one notable distinction between the *Arizona* case and this case: whereas the State is the plaintiff in *Arizona*, Governor Ducey is the Plaintiff here. Defendants here argue that "any conceivable harm arising out of the allegations in the Complaint runs to the State of Arizona," not Governor Ducey. (Doc. 19 at 13). To the contrary, Plaintiff argues that "[t]he Final Rule directly regulates Governor Ducey by substantially restricting his authority and discretion to use SLFRF monies." (Doc. 20 at 7–8). Plaintiff's argument is based on A.R.S. § 41-101.01(A), which provides that "[t]he governor . . . is authorized to accept and expend any . . . funds made available to the state through any federal statute."

The Court agrees with Plaintiff. Pursuant to Arizona law, it is for Plaintiff to decide whether to accept SLFRF funds and how such funds should be spent. Plaintiff alleges that the ARPA and the Final Rule improperly limit his ability to put the funds towards the Programs. Accordingly, the statute and regulation "purport[ ] to regulate the plaintiff's primary conduct" and "alter[ ] his rights, obligations, privileges, powers, or liabilities" such that Plaintiff is their "object" and has standing to challenge them. *Desert Water Agency v. U.S. Dep't of the Interior*, 849 F.3d 1250, 1254 n.3 (9th Cir. 2017). Plaintiff's claims will not be dismissed for lack of standing.

### ii.    Ripeness

The purpose of the ripeness inquiry is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over

administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 732–33 (1998) (internal quotation marks omitted). Ripeness has both constitutional and prudential components. *See Safer Chems., Healthy Fams. v. U.S. Env't Prot. Agency*, 943 F.3d 397, 411 (9th Cir. 2019). For constitutional ripeness, "a case must present issues that are definite and concrete, not hypothetical or abstract." *Id.* (internal quotation marks omitted); *see also Lee v. Oregon*, 107 F.3d 1382, 1387 (9th Cir. 1997) ("While standing is primarily concerned with *who* is a proper party to litigate a particular matter, ripeness addresses *when* that litigation may occur."). For prudential ripeness, the Court must consider "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1124 (9th Cir. 2009). An agency regulation

> is not ordinarily considered the type of agency action 'ripe' for judicial review under the APA until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him.

*Id.* (quoting *Lujan*, 497 U.S. at 891).

Here, the issues are sufficiently concrete and fit for judicial review. The January 14 letter states in no uncertain terms that the Programs "as currently structured are ineligible uses of SLFRF funds." (Doc. 1-7 at 3). Although Defendants have not actually initiated an enforcement proceeding, they have applied the ARPA and Final Rule to the Programs and concluded that the Programs are impermissible uses of the funds. The dispute thus has a manageable scope and concrete facts to guide this Court's review. Finally, as explained above, Plaintiff has alleged a credible threat of enforcement. Accordingly, this case is ripe. *Cf. Colwell*, 558 F.3d at 1125–28 (finding an agency's policy guidance was not ripe for review where the text of the guidance was ambiguous and contained discretionary language and where the parties provided no examples of the

agency's use of the policy guidance).

### iii. Administrative Exhaustion

Defendants argue that Plaintiff must exhaust his administrative remedies under 31 C.F.R. § 35.10(e) before he can seek judicial review. (Doc. 19 at 16). That provision states in part, "A recipient must invoke and exhaust the procedures available under this subpart prior to seeking judicial review of a decision under § 35.10," referring to a recoupment decision by the Secretary of the Treasury. C.F.R. § 35.10(e). Here, however, Plaintiff is not challenging a recoupment decision but rather the Final Rule and the ARPA themselves. Thus, no exhaustion requirement applies, and the Court has no discretion to impose one. *See Darby v. Cisneros*, 509 U.S. 137, 154 (1993). Plaintiff's claims will not be dismissed for failure to exhaust administrative remedies.

### iv. APA Reviewability of the January 14 Letter

Finally, with respect to Plaintiff's second cause of action—violation of the APA based on the January 14 letter—Plaintiff alleges that the letter is reviewable under the APA as a "final agency action." (Doc. 1 ¶ 86); *see* 5 U.S.C. § 704. Defendants' Motion to Dismiss argues that the letter is not, in fact, a final agency action. In his Response, Plaintiff states, "Because [Defendants] concede that the Final Rule is a final agency action under the [APA], its focus on whether the January 14 Letter independently provides grounds for APA review is extraneous." (Doc. 20 at 10 (citation omitted)). Plaintiff then goes on to make a conclusory statement that the letter meets the standard for a final agency action. (Doc. 20 at 10–11). The Court is somewhat perplexed by Plaintiff's position given that the Complaint sets forth two separate causes of action under the APA—one based on the Final Rule and one based on the letter. In light of Plaintiff's position that the reviewability of the letter is extraneous and, at least as importantly, his failure to substantively respond to Defendants' arguments, the Court finds that Plaintiff has conceded that the letter is not a final agency action.[3] *See, e.g.*, *M.S.*

---

[3] Regardless, the Court finds Defendants' arguments as to the letter to be well-taken. An agency action is final when it (1) "mark[s] the consummation of the agency's

*v. County of Ventura*, No. CV 16-03084-BRO (RAOx), 2017 WL 10434015, at *24 n.20 (C.D. Cal. Mar. 7, 2017) ("Failure to respond to the merits of one party's argument constitutes a concession of that argument."). Accordingly, the Court lacks jurisdiction over Plaintiff's second cause of action, which will be dismissed. *See Cabaccang v. U.S. Citizenship & Immigr. Servs.*, 627 F.3d 1313, 1315 (9th Cir. 2010). Still, Plaintiff's other causes of action are justiciable, so the Court will proceed to the merits of the Complaint.

### b. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Id.* Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). The Court will consider Plaintiff's first, third, and fourth causes of action in turn.

---

decision-making process" rather than being "of a merely tentative or interlocutory nature," and (2) is "one by which rights or obligations have been determined, or from which legal consequences will flow." *S.F. Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 577 (9th Cir. 2019) (internal quotation marks omitted). "The imposition of an obligation or the fixing of a legal relationship is the indicium of finality in the administrative process." *Cabaccang v. U.S. Citizenship & Immigr. Servs.*, 627 F.3d 1313, 1315 (9th Cir. 2010). Here, the letter does not meet the first prong because it is not Defendants' "last word" with respect to the Programs. *See Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 984 (9th Cir. 2006). Rather, the letter states only that Treasury "may" initiate a recoupment action or withhold SLFRF funds. (Doc. 1-7 at 3); *cf. Or. Nat. Desert Ass'n*, 465 F.3d at 984 (holding that an agency action is final where the agency "arrive[s] at a definitive position . . . *and put[s] that decision into effect*" (emphasis added)). Likewise, the letter does not meet the second prong because it does not have legal force, does not have a "direct and immediate effect on the day-to-day business" of Plaintiff, does not determine any rights or obligations, and does not impose legal consequences. *See id.* at 987. Instead, it sets forth potential, non-final, future consequences. Thus, if the Court were to review the letter, it would "intrude on the agency's turf and thereby meddle in the agency's ongoing deliberations." *S.F. Herring Ass'n*, 946 F.3d at 578. It bears noting, however, that the parties agree that the Final Rule is a final agency action under the APA, and that nothing precludes the letter from being used to demonstrate the threat of enforcement.

### i. First Cause of Action: APA

Plaintiff's first cause of action states that "the Final Rule far exceeds the limited statutory authority granted to Treasury by ARPA." (Doc. 1 ¶ 77). Plaintiff claims that nothing in the ARPA authorizes Treasury to restrict SLFRF funds from being put towards programs that undermine COVID-19 mitigation efforts. Specifically, Plaintiff notes that permissible uses of SLFRF funds enumerated in the statute include "to respond to the public health emergency with respect to [COVID-19] *or* its negative economic impacts." 42 U.S.C. § 802(c)(1)(A) (emphasis added).

In the Motion to Dismiss, Defendants argue that the Final Rule is "appropriate" to carrying out the ARPA, pursuant to § 802(f)'s authorization for the Secretary to "issue such regulations as may be necessary or appropriate to carry out this section." They assert that the ARPA's broad grant of authority to the Secretary encompasses the "common-sense conclusion" that States "may not undermine one purpose of the [ARPA] while claiming to advance another purpose." (Doc. 19 at 20).

"When a party challenges agency action as inconsistent with the terms of a statute, courts apply the familiar analytical framework set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*," 467 U.S. 837 (1984). *Corrigan v. Haaland*, 12 F.4th 901, 906–07 (9th Cir. 2021). First, the Court "must determine whether Congress has directly spoken to the precise question at issue, or, instead, whether the statute is ambiguous." *Id.* at 907 (internal quotation marks omitted). At this step, courts use "traditional tools of statutory construction, including an examination of the statute's text, the structure of the statute, and (as appropriate) legislative history." *Id.* (internal quotation marks omitted). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* (internal quotation marks omitted). But "if the statute is silent or ambiguous with respect to the specific issue," the Court proceeds to the second step. *Chevron*, 467 U.S. at 843. "At step two, the question for the court is whether the agency's action is based on a permissible construction of the statute." *Corrigan*, 12 F.4th at 907

(internal quotation marks omitted). A court must defer to the agency's construction "if it is a reasonable one, even if it is not the construction the court would arrive at." *Id.* (internal quotation marks omitted).

To reiterate for the purposes of the Court's textual analysis, the relevant statutory language states that "a State . . . government shall only use the funds provided under a payment made under this section . . . to respond to the public health emergency with respect to [COVID-19] or its negative economic impacts" among other permissible uses not applicable here. 42 U.S.C. § 802(c)(1). The first question under *Chevron* is whether, Congress unambiguously intended to allow states to use SLFRF funds for programs that mitigate the negative economic impacts of the COVID-19 pandemic without regard for their effect on the public health emergency. Plaintiff argues that the use of "or" suggests "that Congress gave the states discretion to choose a singular 'purpose' of the [ARPA] to be advanced by any particular SLFRF program" and that the Final Rule impermissibly elevates the public-health purpose over all others. (Doc. 20 at 12).

Plaintiff's argument, however, takes too narrow a view of the statute. *See W. Watersheds Project v. Interior Bd. of Land Appeals*, 624 F.3d 983, 987 (9th Cir. 2010) ("Whether statutory language is sufficiently plain or not is 'determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole.'" (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). Section 802(a) appropriates the funding for the SLFRF "for making payments under this section to States, territories, and Tribal governments to mitigate the fiscal effects stemming from the public health emergency with respect to [COVID-19]." In line with the explicit purpose of the SLFRF as stated in § 802, the statute at least carries the possibility that SLFRF funding may not be used for programs with conditions that undermine public health guidance, as such programs would exacerbate rather than mitigate the pandemic's fiscal effects. This proposition is axiomatic: a program that addresses fiscal effects of the pandemic but contains a condition that would promulgate the spread of the virus prolongs the pandemic *and* its resulting fiscal effects—thereby

failing to provide mitigation of either. Despite the use of "or" in § 802(c)(1), the same could be said of that provision's "economic impacts": a program that responds to the pandemic's negative economic impacts but discourages compliance with public health efforts creates more negative economic impacts by perpetuating the pandemic. At the very least, then, the statute is ambiguous as to whether a state may impose a condition that undermines public health efforts on a program that addresses the COVID-19 pandemic's economic impacts.

Because the ARPA is ambiguous, the Court proceeds to consider whether the Final Rule permissibly construes the statute. Based on the axiom explained above, the Restriction against conditions that undermine public health guidance is certainly a reasonable construction of the ARPA. This is particularly true in light of Congress's authorization for the Secretary "to issue such regulations as may be necessary or appropriate to carry out this section." 42 U.S.C. § 802(f). That language gives the agency broad regulatory discretion. *See Bear Lake Watch, Inc. v. Fed. Energy Regul. Comm'n*, 324 F.3d 1071, 1074 (9th Cir. 2003). Certainly, the decision to prohibit states from conditioning participation in a program that furthers one purpose of the ARPA on undermining another interconnected purpose falls within that discretion. Because a program that requires noncompliance with public health guidelines may exacerbate the pandemic and create *more* negative economic impacts and fiscal effects—contrary to the express statutory purpose of the SLFRF funds—the Final Rule's construction of the ARPA is reasonable and appropriate.

For similar reasons, the Court rejects Plaintiff's argument that Congress would have spoken clearly if it intended to give Treasury expansive authority to restrict the use of SLFRF funds. (Doc. 20 at 14). In fact, Congress authorized Treasury to issue regulations, including those on the use of funds, "as necessary or appropriate" to carry out the statute—which is itself a clear statement of Congress's intent. And Plaintiff's contention that public health matters are traditionally regulated at the state level is off base for an additional reason: the issue here is not regulation of public health matters, but

rather, regulation of the use of federal funding, which falls squarely within the federal purview. *See Nat'l Fed'n of Indep. Bus. v. Sibelius*, 567 U.S. 519, 580 (2012). The Restriction does not contradict or exceed the authority given to Treasury by the ARPA, so Plaintiff has not stated a plausible claim for violation of the APA.

### ii. Third Cause of Action: Spending Clause

Plaintiff's third cause of action asserts that "[i]f the Final Rule is authorized by statute, then it violates the Spending Clause because the [ARPA] is ambiguous in the strings it attaches to the use of SLFRF monies." (Doc. 1 ¶ 97). "Congress has broad power to set the terms on which is disburses federal money to the States, but when Congress attaches conditions to a State's acceptance of federal funds, the conditions must be set out unambiguously." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (internal citations and quotation marks omitted). This is not a particularly high bar, however, as "conditions may be 'largely indeterminate,' so long as the statute 'provides clear notice to the States that they, by accepting funds under the Act, would indeed be obligated to comply with the conditions.'" *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002). While Congress need not "list every factual instance in which a state will fail to comply with a condition," it must "make the existence of the condition itself—in exchange for the receipt of federal funds—explicitly obvious." *Id.* The Court must view the statute "from the perspective of a state official who is engaged in the process of deciding whether the State should accept [SLFRF] funds and the obligations that go with those funds." *Arlington Cent. Sch. Dist.*, 548 U.S. at 296.

Defendants argue that Plaintiff has not pled a plausible Spending Clause claim because the statute's enumeration of permissible uses of SLFRF funds, together with its authorization for the Secretary to issue all "necessary or appropriate" regulations, put Plaintiff on notice of the existence of the conditions associated with the acceptance of funds. The Court agrees.

In *Mayweathers*, the defendants argued that the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, was unconstitutional.

314 F.3d at 1066. Specifically, they argued that RLUIPA's provision that "any institution receiving federal funds must not substantially burden the exercise of religion absent a showing that the burden is the least restrictive means of serving a compelling government interest" imposed an ambiguous condition. *Id.* at 1067. The Ninth Circuit rejected that argument, finding that even though RLUIPA's standard was "perhaps unpredictable," it still unambiguously set forth the condition. *Id.*

Similarly, here, the ARPA clearly provides that states "shall only use [SLFRF] funds" for specific purposes, including responding to the COVID-19 pandemic or its negative economic impacts. 42 U.S.C. § 802(c)(1). Like the language of the RLUIPA, that language "unambiguously creates" a condition on the use of funds. *Mayweathers*, 314 F.3d at 1067. Even though the ARPA's language is broad and undoubtedly does not specify every use that would violate the condition, Congress is not required to provide such specificity. *See id.* Instead, here, Congress delegated to the Secretary the authority to issue "such regulations as may be necessary or appropriate to carry out this section"—which would certainly include greater specificity as to permissible uses. 42 U.S.C. § 802(f). While in *Mayweathers*, it was left to the courts to determine how RLUIPA's condition would apply, resulting in "different determinations in different courts," 314 F.3d at 1067, allowing Congress to delegate to an agency the authority to provide more specific regulations, as the ARPA does, is better aligned with the judiciary's role and provides greater predictability for regulated parties in advance of litigation. Thus, the fact that the ARPA gives the Secretary authority to determine how the statute should apply to more specific facts rather than leaving it to the courts, as in *Mayweathers*, does not change the outcome. In short, the ARPA's condition is no more ambiguous than the condition that the Ninth Circuit approved in *Mayweathers*, and, as explained previously, Treasury has permissibly construed the ARPA to prohibit programs that require or encourage noncompliance with public health guidelines.

Defendants' citation to *Biden v. Missouri* further bolsters this Court's conclusion. 142 S. Ct. 647 (2022). There, the Supreme Court found that a rule issued by the Secretary

of Health and Human Services fell within his statutory authority. *Id.* at 652. The Supreme Court summarized that statutory authority stating, "Congress has authorized the Secretary to impose conditions on the receipt of Medicaid and Medicare funds that 'the Secretary finds necessary in the interest of the health and safety of individuals who are furnished services.'" *Id.* (quoting 42 U.S.C. § 1395x(e)(9)). The Court did not question the constitutional propriety of such a broad and indefinite grant of authority to impose such conditions. Likewise, here, there is no constitutional infirmity with the ARPA because it unambiguously puts recipients on notice that SLFRF funding is conditioned on appropriate use pursuant to the statute and its associated regulations. Plaintiff has failed to plead a plausible Spending Clause claim.

### iii. Fourth Cause of Action: Nondelegation Doctrine

"The nondelegation doctrine bars Congress from transferring its legislative power to another branch of Government." *Gundy v. United States*, 139 S. Ct. 2116, 2121 (2019). Still, the Supreme Court has recognized that "in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Mistretta v. United States*, 488 U.S. 361 (1989). Accordingly, the Court has repeatedly held that "a statutory delegation is constitutional as long as Congress lays down by legislative act an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform." *Gundy*, 139 S. Ct. 2116 at 1213 (internal quotation marks omitted). This is "an exceedingly modest" and "not demanding" standard, and "[p]revailing on a non-delegation challenge is thus a tall order." *United States v. Melgar-Diaz*, 2 F.4th 1263, 1266–67 (9th Cir. 2021). The Supreme Court has "repeatedly turned down many non-delegation challenges, including in cases involving very broad conferrals of authority." *Id.* at 1267; *see also Gundy*, 139 S. Ct. at 2130–31 (Alito, J., concurring) ("[S]ince 1935, the Court has uniformly rejected nondelegation arguments and has upheld provisions that authorized agencies to adopt important rules pursuant to extraordinarily capacious standards.").

Here, 42 U.S.C. § 802(f) provides that "[t]he Secretary shall have the authority to issue such regulations as may be necessary or appropriate to carry out this section." Plaintiff argues that this provides Defendants "an incomprehensibly broad swath of legislative power, in violation of the nondelegation doctrine." (Doc. 20 at 18). The Court disagrees.

Defendants' citation to *Beecher v. Commissioner of Internal Revenue* is instructive. 481 F.3d 717 (9th Cir. 2007). There, the plaintiffs challenged a provision of the Internal Revenue Code, 26 U.S.C. § 469(*l*) that provides, "The Secretary shall prescribe such regulations as may be necessary or appropriate to carry out the provisions of this section," followed by an inclusive list of such regulations. *Id.* at 723. The Ninth Circuit rejected the plaintiffs' nondelegation argument, holding that "[s]uch direction is sufficient to avoid offending the Constitution, and ample when compared to other statutory schemes that courts have held to be lawful." *Id.* (citing cases).

The delegation in this case is virtually identical to the one in *Beecher*, save for the absence of a list of regulations that fall within the grant of authority. But the nonexclusive list found in the statute at issue in *Beecher* does nothing to narrow the Secretary's authority to prescribe regulations "necessary or appropriate to carry out the provisions of this section." 26 U.S.C. § 469(*l*). Thus, the delegation here is no broader than the one approved by the Ninth Circuit in *Beecher*. Under the ARPA, the Secretary may promulgate only those regulations necessary and appropriate to carrying out the SLFRF program within the parameters of the statute. Because Congress has thereby provided an intelligible principle to guide the Secretary's exercise of authority, Plaintiff has failed to state a plausible claim for which relief can be granted based on the nondelegation doctrine.

### III. CONCLUSION

Leave to amend a deficient complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). When dismissing for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made,

unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal quotation marks omitted). Here, the deficiencies could not be cured with additional facts as Plaintiff's claims are based on the text of the ARPA and Final Rule, so leave to amend will not be given. Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 19) is **granted**. Plaintiff's Complaint is dismissed with prejudice.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of Defendants and **terminate** this action.

Dated this 19th day of July, 2022.

Honorable Steven P. Logan
United States District Judge